686 So.2d 966 (1996)
Anthony DIEZ
v.
Gerald J. DAIGLE, Jr., The Law Firm of Chaffe, McCall, Phillips, Toler & Sarpy, and Attorneys' Liability Insurance Society, Inc.
No. 96-CA-1174.
Court of Appeal of Louisiana, Fourth Circuit.
December 27, 1996.
*967 Gene W. Lafitte, John M. Wilson, James A. Brown, Cheryl M. Kornick, Liskow & Lewis, New Orleans, for Defendants/Appellees Chaffe, McCall, Phillips, Toler & Sarpy and Attorneys' Liability Assurance Society, Inc.
Earl N. Vaughn, Law Offices of Earl N. Vaughan, Metairie, and Bates & LeBlanc, Metairie, for Plaintiff/Appellant.
Phillip A. Wittmann, Richard C. Stanley, Thomas M. Flanagan, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for Defendant/Appellee Gerald J. Daigle, Jr.
Before LOBRANO, JONES and MURRAY, JJ.
LOBRANO, Judge.
Plaintiff, Anthony Diez, appeals summary judgments granted in favor of defendants, Gerald J. Daigle, Jr., Daigle's former law firm of Chaffe, McCall, Phillips, Toler and Sarpy ("Chaffe McCall"), and Attorneys' Liability Assurance Society, Inc. ("ALAS"), their malpractice insurer. We affirm.
The facts as alleged in the pleadings and briefs are as follows: In September 1989, Diez was requested by David Ridgeway, President of the now-defunct Alliance Casualty and Reinsurance Company ("Alliance"), to sign a $350,000.00 promissory note payable upon demand to Alliance. On September 15, 1989, Diez met with Ridgeway at Ridgeway's offices and questioned the legality of the execution of this promissory note. With Diez in his office, Ridgeway telephoned Daigle, the attorney for Alliance, and requested an opinion as to the legality of this transaction. Daigle allegedly assured Ridgeway that the execution of the promissory note would be legal and that he had prepared the note for Diez's signature. The note was then executed.[1]
In July 1992, Diez was summoned to the United States Attorney's Office for the Eastern District of Louisiana and was informed that the execution of the 1989 promissory note was illegal and that he was going to be indicted along with Ridgeway and other individuals connected to Alliance. After consulting with an attorney, Diez entered a guilty plea to a charge of mail fraud.
Diez subsequently filed the instant suit against Daigle, Chaffe McCall, and ALAS alleging that he relied on Daigle's experience and expertise and would not have participated in the issuance of the promissory note without Daigle's assurances. He claims that the legal advice rendered by Daigle regarding the execution of the promissory note was negligent and unprofessional and resulted in criminal exposure to Diez. Diez claims that he was required to plead guilty to mail fraud in federal court because of his reliance on Daigle's advice and states that he has suffered damages as a result thereof. He further alleges that the managing partners of Chaffe McCall failed to monitor and/or properly supervise the conduct of Daigle and benefited materially from legal bills paid by Alliance for Daigle's advice.
Daigle, Chaffe McCall and ALAS filed motions for summary judgment. In support, they relied on Diez's Federal plea agreement and the factual basis which supports that agreement. They argued that there existed no client-attorney relationship between Diez and Daigle and therefore no duty was owed by Daigle. They also argue that Diez is estopped from pursuing his claims because of the guilty plea entered by him.
*968 The trial court granted defendants' motions. Relying on Wolfson v. Baker, 623 F.2d 1074 (5th Cir.1980), cert. denied, 450 U.S. 966, 101 S.Ct. 1483, 67 L.Ed.2d 615, the judge reasoned that Diez's admission of guilt precluded him from now claiming that others caused the consequences of his conduct. The court also reasoned that because Diez had no attorney-client relationship with any of the defendants, there could be no claim of legal malpractice. The court distinguished Shaw v. Everett, 582 So.2d 195 (La.App. 4th Cir.1988), writ denied, 531 So.2d 272, 531 So.2d 275 (La.1988)[2] on the fact that the disposition in the instant case was based on causation and thus the issue of an attorney's duty to a non client need not be addressed. Diez perfects this appeal.
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hosp. Inc., 93-2512 (La.7/5/94), 639 So.2d 730. The summary judgment article, LSA-C.C.P. art. 966, was amended by the Louisiana Legislature in 1996. The amended version of article 966 became effective on May 1, 1996[3] and states that the summary judgment procedure is favored and "shall be construed to accomplish these ends." We interpret the amended version of C.C.P. art. 966 to be procedural in nature and, therefore, subject to retroactive application. LSA-C.C. art. 6.
However, regardless of whether or not summary judgments are favored, the amended version of C.C.P. art. 966 does not change the law regarding the burden of proof in a summary judgment proceeding. The burden of proof remains on the mover to show "that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966 C. Only after the mover has met this burden may summary judgment be rendered against "an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial." LSA-C.C.P. art. 966 C. Therefore, if genuine issues of fact remain, this Court must still reject summary judgment even though this procedure is now favored.
*969 Diez argues that the doctrine of collateral estoppel does not bar him from seeking recovery against the attorney whose advice he allegedly relied on. He further argues that his claim is one for negligent representation rather than legal malpractice and thus the attorney-client relationship is not necessary. He cites Shaw v. Everett, supra, for the proposition that an attorney can owe a duty to a non-client.
To the extent that the trial judge relied on the doctrine of collateral estoppel in reaching his decision, that was error. Although defendants cite numerous federal cases in support of that position, Louisiana law, for whatever reason, has steadfastly refused to accept that doctrine. Steptoe v. Lallie Kemp Regional Hosp., 93-1359 (La.3/21/94), 634 So.2d 331, on rehearing 93-1359 (La.6/24/94), 638 So.2d 643; Vicknair v. Hibernia Bldg. Corp., 479 So.2d 904 (La. 1985); Welch v. Crown Zellerbach Corp., 359 So.2d 154 (La.1978); SJ v. PM, 586 So.2d 662 (La.App. 2nd Cir.1991). Although perhaps the issue of collateral estoppel in Louisiana should be reconsidered, it is not necessary to do so in this case.
The facts of this case are not disputed. Diez pled guilty to mail fraud. Daigle advised his clients, Alliance and Ridgeway, about the legalities of the exchange of promissory notes between Diez and Ridgeway. Diez was not Daigle's client but he presumably relied on Daigle's advice. Assuming arguendo that he did, for the following reasons we hold summary judgment is proper.
Diez characterizes his claim as negligent misrepresentation as opposed to legal malpractice. For that reason he asserts the attorney-client relationship is not necessary. We need not revisit the issue of whether an attorney can owe a duty to a non-client because we find that, given the uncontested facts of this case, Diez cannot prove causation.
To prevail in an action for negligent misrepresentation, a plaintiff must prove that the defendant had a duty to supply correct information, that the duty was breached and that the breach caused plaintiff's damages. National Council on Compensation Ins. v. Quixx Temporary Services, Inc., 95-0725 (La.App. 4th Cir. 11/16/95) 665 So.2d 120. When Diez pled guilty to mail fraud, he admitted he had the specific intent to commit fraud. The factual basis for the plea specifically states that he intended to commit fraud.[4] Thus, his admission of an intent to commit mail fraud makes any alleged representations by Mr. Daigle irrelevant. Diez's damages were caused by his guilty plea.
Diez argues, however, that he relied in good faith on Daigle's advice when he agreed to execute the promissory note which was the basis of the federal charges. Good faith is, in fact, a defense to the intent element of mail fraud. United States v. Fowler, 735 F.2d 823, 825 (5th Cir.1984), citing United States v. Goss, 650 F.2d 1336 (5th Cir. 1981). Nevertheless, when Diez pled guilty he admitted he had the specific intent to defraud, and thus any good faith reliance on Daigle's advice was negated. Simply put, Diez cannot now complain that his damages resulted from causes other than the one to which he admitted when he pled guilty.
Because we find that Diez cannot prove causation, it is unnecessary to address the applicability of Shaw v. Everett, supra, and whether an attorney may owe a duty to a non-client.
AFFIRMED.
NOTES
[1] The execution of the note by Diez was part of an exchange of notes. Ridgeway, as president of Alliance executed a similar $350,000.00 note in favor of Diez's corporation, Coordinated Financial Planner's Inc.
[2] In Shaw, this Court held that the plaintiff/non-client had stated a cause of action against attorneys whom she alleged had intentionally and/or negligently participated in the distribution of proceeds of a note to which she had a pending claim even though they had full knowledge of her claim. She also alleged that these same attorneys had knowledge that her former husband's attorney had withdrawn the note from the court registry under false representations. The facts of this case were particularly egregious and this Court allowed her to go forward with her action against these attorneys despite the fact that she did not have an attorney-client relationship with them.
[3] The 1996 amended version of LSA-C.C.P. art. 966 states as follows:

A.(1) The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends.
B. The motion for summary judgment and supporting affidavits shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the date of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.
C. After adequate discovery or after a case is set for trial, a motion which shows that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law shall be granted against an adverse party who fails to make a showing sufficient to establish the existence of proof of an element essential to his claim, action, or defense and on which he will bear the burden of proof at trial.
D. The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any event judgment on the motion shall be rendered at least ten days prior to trial.
E. A summary judgment may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.
F. A summary judgment may be rendered on the issue of insurance coverage alone although there is a genuine issue as to liability or the amount of damages.
G. Notwithstanding any other provision of this Article to the contrary, the burden of proof shall remain with the mover.
[4] The factual basis, required before entering a guilty plea in Federal Court, was submitted by defendants in support of their summary judgment.