IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-50856
_____


DOROTHY BLOW,

                                        Plaintiff-Appellant,

                          versus

CITY OF SAN ANTONIO, TEXAS,

                                        Defendant-Appellee.
_____

        Appeal from the United States District Court for the
                    Western District of Texas
_____
                        January 8, 2001
Before JOLLY, HIGGINBOTHAM, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

        Dorothy Blow, an African-American, has been employed since

1988 as a librarian for the City of San Antonio Public Library.

When she applied for a supervisory position in 1997, the library

hired a white male from outside the department.  Believing that the

library had failed to promote her because of her race, Blow filed

suit against the City of San Antonio under Title VII of the 1964

Civil Rights Act.  The City argued that the supervisory position

had already been filled by the time the hiring committee received

Blow's application.  The district court concluded that Blow had not

presented sufficient evidence that would allow a jury to conclude

that the City's reason for not promoting her was a pretext for racial discrimination. The court granted the City's motion for summary judgment and dismissed Blow's claims. We reverse and remand.

I

The City of San Antonio Public Library hired Dorothy Blow in 1988 for the position of "Librarian I" in the Business and Science Department. Blow claims that from the beginning of her employment, she has been subjected to racially insensitive remarks and treatment. She further alleges that the library has required other African-American employees to transfer to smaller branches in neighborhoods with a high concentration of minorities.

In early 1995, Blow joined the newly created Government Documents Department and was promoted to the level of Government Documents Librarian II ("GDL-II"). During her first few months in the department, Blow received favorable performance appraisals.

In late 1995, the library created a new supervisory position, Government Documents Librarian III ("GDL-III"). Blow applied for the job and was granted an interview, but the library instead hired Owen Ellard, a Librarian II from another department. Blow confronted Craig Zapatos, the library supervisor, and demanded to know why she had not been promoted. Zapatos explained that Ellard was more experienced in managing a government documents collection

and was proficient in using the internet to retrieve government information.

Ellard's tenure as GDL-III lasted only ten months, from January to November 1996. Ellard was Blow's immediate supervisor. According to Blow, Ellard treated her disrespectfully and assigned her menial tasks, such as shelving and stacking, that were usually performed by subordinate library assistants. On one occasion, Blow alleges, Ellard physically threatened her.

When Ellard resigned in November 1996, Craig Zapatos named Jana Prock interim GDL-III. Blow was unaware that Prock and Zapatos were the only members of the "hiring team" responsible for finding a permanent GDL-III. Blow claims that she periodically asked Prock whether she hoped to keep the GDL-III position permanently, and in January 1997, while asking Prock again about her intentions, Blow announced that she was interested in the job. At this point, Prock asked Blow directly whether she thought she was qualified to be a GDL-III. Blow listed her qualifications and even asked to list Prock as a reference. In spite of these conversations about Blow's interest in the position, Prock never told her that the library had posted a job opening announcement and was searching for a permanent GDL-III.

Blow learned of the job posting over the internet in late January 1997 and decided to formally apply about a month later.

She found the job opening announcement and called the City personnel department to confirm that the position was still open and that applications were still being accepted. On March 3, 1997, she delivered her application to the City's personnel department.

To make sense of what happened next, Blow argues, we must understand the City of San Antonio's hiring procedures. Blow points to documents on the City's website and to the City's detailed "Administrative Directive 4.16" for an explanation of the city's normal hiring process. The stated purpose of these written hiring procedures is "to insure fair and impartial . . . placement of qualified applicants." When a department has an open position, the department is required to set qualifications and publish a recruitment announcement. Significantly, each department is responsible for insuring "that each and every employee is aware" of recruitment announcements within his or her department. Applications are received and initially processed by a central personnel department. "After an appropriate number of applications have been received for the position involved, [an] eligibility list is then established." It was customary for eligibility lists for librarian positions to be forwarded to Martha Montemayor, the senior administrative assistant in the library department, who would then forward the lists and applications to Craig Zapatos, the

library personnel director, or to the hiring team for particular positions.

There are two hiring preferences relevant to this case. First, qualified city employees are given a preference when establishing eligibility lists. Apparently, this means that city employees are placed at the top of the eligibility list with the designation "C.E." next to their names. Second, the City adopted an affirmative action plan in 1994-1995 that establishes departmental "goals" for "job groups in which there is significant minority or female underutilization." Blow presented some evidence that black females are underrepresented in the library system, but the City failed to produce requested documents pertaining to the library department's "action goals" for 1997.

Blow, however, was never in the running. Before Blow submitted her application for the GDL-III position on March 3, Wilson Plunkett had submitted an application on February 10, 1997. Plunkett's application appears to have been misclassified by the City personnel department as an application for entry level Librarian I position. When Montemayor received it and noticed the error, she forwarded his application to Prock, who scheduled an interview. (The City failed to produce Plunkett's application and is not part of the record.) Prock and Zapatos interviewed Plunkett on March 28 and recommended that he be hired. Blow asserts that

shortly after Plunkett's interview, Prock advised Blow that "now is a good time for you to submit your application." After receiving approval from the head of the library department, the library officially extended an offer to Plunkett in April 1997.

On April 22, the city personnel department finally issued an eligibility list for the GDL-III position. There were ten names on the list, with Dorothy Blow's at the top with the "C.E." designation. Because Plunkett had already been selected, Blow was not considered for the position.

## II

Blow filed a complaint with an in-house EEO officer, who found no discrimination in the handling of the application. Blow then filed a complaint with the EEOC on July 10, 1997, alleging that she was denied the promotion to GDL-III in both 1996 and 1997 on account of her race. Before completing its investigation, the EEOC issued a right to sue letter, and Blow filed suit against the City of San Antonio in state court in October 1997. Blow alleged racial discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et. seq., because of the City's failure to promote her to the position of GDL-III. The City then removed the case to the United States District Court for the Western District of Texas.

After she filed suit, Blow filed another complaint with the EEOC alleging that she had received a low work performance

evaluation because she had instituted this suit.  At her request, the EEOC issued a right-to-sue letter on the retaliation claim, and Blow amended her complaint to add this claim.

The City filed its motion for summary judgment on January 25, 1999. The district court referred the matter to a magistrate judge, who recommended that all claims be dismissed.  Blow filed objections to the magistrate judge's report, and the City responded.  On July 30, 1999, the district court accepted the magistrate judge's recommendation and issued an order granting the City's motion for summary judgment and dismissing all of Blow's claims.

## III

The ultimate issue raised on appeal is whether the district court erred in granting the City's motion for summary judgment on Blow's 1997 Title VII failure to promote claim.

## A

Summary judgment is appropriate only if the full record discloses "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56.  When a district court has granted a motion for summary judgment, we review the question de novo, applying the same substantive test set forth in Rule 56.  Horton v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999).  In reviewing the record as a

whole, we view all facts in the light most favorable to the non-moving party and do not defer to any factual assumptions the district court has apparently made. Cardinal Towing & Auto Repair, Inc. v. City of Bedford, 180 F.3d 686, 690 (5th Cir. 1999); New York Life Ins. Co. v. Baum, 707 F.2d 870, 871 (5th Cir. 1983) (on rehearing).

B

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), and subsequent decisions, the Supreme Court has allocated the burden of production in Title VII cases.  The plaintiff must first establish a prima facie case of discrimination.  In a failure to promote claim under Title VII, a plaintiff must show that: (1) she was within a protected class; (2) she was qualified for the position sought; (3) she was not promoted; and (4) the position she sought was filled by someone outside the protected class.  See Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981); Grimes v. Texas Dep't of Mental Health & Mental Retardation, 102 F.3d 137, 140 (5th Cir. 1996).  It is undisputed that Blow, an African-American, is a member of a protected class; that she was qualified for the advertised GDL-III position and was placed on the April 1997 eligibility list; that she submitted an application to the City's personnel department on March 3, 1997; that she was not promoted to the post; and that the library hired

8

a white male librarian to fill the position.  Without question, then, Blow established her prima facie case under McDonnell Douglas.

C

Establishing the prima facie case raises an inference of unlawful discrimination, and the burden of production then shifts to the defendant to proffer a legitimate, nondiscriminatory reason for the challenged employment action.  Burdine, 450 U.S. at 254. The City's proffered nondiscriminatory explanation is quite simple: Blow did not file her application in time for it to be considered. As the district court concluded, by the time Montemayor received Blow's application, the job was already filled.[1]  There is some support for the district court's interpretation of the facts, but under Rule 56, it must be the only reasonable interpretation.

Blow argues that the evidence supports another, equally plausible explanation.  According to Blow, Prock and Zapatos deliberately failed to publicize the job opening within the

---

[1]The district court treats this timeliness question as part of Blow's prima facie case.  The court found that Blow had not "sought" the job because she had applied for the GDL-III position at a time when the library was no longer seeking applications for that position.  This approach is dubious because the crux of Blow's argument is that the library disregarded usual hiring practices and hired the first person they interviewed in order to avoid promoting her.  The City's contention that Blow's application was untimely is properly regarded as a nondiscriminatory reason for not promoting her.

department (as Administrative Directive 4.16 requires) in order to prevent Blow from applying; Prock not only concealed the job opening from her but also actively discouraged her application; Prock knew that Blow, as a city employee, would be given preference in hiring; Prock received Plunkett's application--which arrived in an unusual manner and has apparently been misplaced-- and quickly scheduled an interview with him; soon after Plunkett was interviewed and chosen for the job, Prock told Blow that "now is a good time for you to submit your application." Considering all the facts and drawing all inferences in favor of Blow, one is simply not required to believe the City's proffered reason.

The facts may be interpreted to support Blow's contention that Prock and Zapatos were motivated by some animus toward her. Because they knew that Blow, as a city employee and a minority, might be given favorable treatment in hiring, Prock and Zapatos hired the first qualified person they interviewed. According to Blow, hiring Plunkett without considering other candidates reflected an intentional and deliberate departure from stated policies that necessarily had the effect of ensuring that Blow would not be hired.

D

After reviewing the record, the district court decided to grant the City's motion because it found "no summary judgment

10

evidence" connecting the City's 1997 hiring decision to Blow's race. The district court's reasoning is not consistent with the Supreme Court's decision in <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 120 S.Ct. 2097, 2108-09, 147 L.Ed.2d 105 (2000).[2]

<u>Reeves</u> held that a trier of fact may infer the ultimate fact of discrimination from the falsity of the employer's explanation. <u>Id.</u> at 2108.

> "[R]ejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination." [<u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502,] 511, 113 S.Ct. 2742 [(1993)]. Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. . . . Such an inference [that the employer is dissembling to cover up a discriminatory purpose] is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." . . . . Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.

<u>Id.</u> at 2108-09. The Court went on to explain that the Fifth Circuit had erred in assuming that a plaintiff must introduce

---

[2]Although <u>Reeves</u> concerned Rule 50 rather than Rule 56, the Court made clear that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" <u>Reeves</u>, 120 S.Ct. at 2110 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-51, 106 S.Ct. 2505, 91 L.Ed.2d 265 (1986).

"additional, independent evidence of discrimination" in order to withstand a motion under Rule 50 or Rule 56.

Blow's case presents us with a straightforward application of <u>Reeves</u>.  On the record before us: The plaintiff has proved her prima facie case; she has presented sufficient evidence to create a material issue of disputed fact as to whether the employer's explanation was false; and there are no unusual circumstances that would prevent a rational fact-finder from concluding that the employer's reasons for failing to promote her were discriminatory and in violation of Title VII.[3]

IV

For the reasons stated above, we REVERSE the district court's order granting summary judgment in favor of the City of San Antonio and REMAND the case for further proceedings.

REVERSED and REMANDED.

---

[3]As examples of these unusual circumstances, the Court explained that "an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." <u>Id.</u> at 2109.

12

EMILIO M. GARZA, Circuit Judge, dissenting.

The majority's opinion leaves the jury to speculate on Dorothy Blow's subjective opinion that the City of San Antonio's alleged bureaucratic snafu amounted to a pretext for discrimination. I believe that Blow has failed to allege any competent evidence that the City employees responsible for hiring had actual knowledge of the bureaucratic error in forwarding the applications. Without such evidence, Blow fails to rebut the City's proffered non-discriminatory reason of bureaucratic mistake, and her Title VII claim cannot survive summary judgment.

The crux of Blow's discrimination claim is that the City violated its internal policy in hiring Wilson Plunkett without regard to the Librarian III eligibility list. Administrative Directive 4.16 states that the City should interview and hire an employee from a compiled list of eligible employees. The City admits that it did not follow its normal hiring policy, but attributes it to an administrative error. Normally, the Human Resources Department collects applications for a particular position, creates an eligibility list for it, and then forwards the applications along with the eligibility list to Martha Montemayor, an administrative assistant at the Public Library Department. In turn, Montemayor forwards only the applications to Craig Zapatos and Jana Prock, the City employees responsible for interviewing

-13-

Librarian III applicants. In the case of Plunkett, however, the Human Resources Department and Montemayor mistakenly forwarded only his application to Zapatos and Prock. Blow's application, as well as those of nine other applicants, was not sent to Montemayor until after Plunkett had been interviewed.

Significantly, Zapatos and Prock have said that when they interviewed Plunkett, they did not know of this bureaucratic error committed by Montemayor and the Human Resources Department. Conversely, Montemayor has said that she did not have any contact with either Zapatos or Prock regarding Blow. Blow has also admitted that Zapatos and Prock did not know that she had applied for the job. Without any evidence linking Zapatos and Prock with Montemayor and the Human Resources Department, Blow simply fails to show that the City's alleged bureaucratic error was, in fact, a pretext for discrimination.

I agree with the majority that Blow only needs to provide evidence that "the employer's proffered explanation is unworthy of credence" to show pretext under the *McDonnell-Douglas* burden-shifting framework. *Reeves v. Sanderson Plumbing Prod.*, 120 S.Ct. 2097, 2106 (2000) (citations omitted). Blow has not met this *Reeves* standard. She has failed to adduce competent evidence to raise a genuine issue of material fact of whether the City's proffered non-discriminatory reason was pretextual. She does not

provide any evidence that Prock and Zapatos knew that she had applied for the job or that they knew of the administrative error. Blow instead offers only her subjective opinion that she is the victim of racial discrimination. *See Lowery v. Univ. of Houston, Clear Lake*, 82 F.Supp.2d 689, 696 (S.D.Tex. 2000) ("Speculation and belief are insufficient to create a fact issue as to pretext, and pretext cannot be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against.")

Accordingly, I respectfully dissent.