United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 21, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 03-31106
Summary Calendar

———————————

ALVIN L CARTHON, SR

> Plaintiff - Appellant

v.

JOHNSON CONTROLS INC

> Defendant - Appellee

———————————————————————————————————————

Appeal from the United States District Court
for the Western District of Louisiana
No. 02-CV-512

———————————————————————————————————————

Before KING, Chief Judge, and JOLLY and PRADO, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Alvin L. Carthon, Sr. appeals from the district court's grant of Defendant-Appellee Johnson Controls, Inc.'s motion for summary judgment with respect to Carthon's claims of employment discrimination, retaliation, and intentional infliction of emotional distress. For the following reasons, we AFFIRM.

### I. BACKGROUND

———————————

[*]     Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Carthon, an African-American male, was hired by Johnson Controls as a maintenance mechanic for its Shreveport, Louisiana plant in 1999. Since that time, Carthon asserts that he has been denied promotions to five different positions because of his race. First, in 2000, Mark Geer, the plant engineering manager and Carthon's supervisor, left the company and his position was eliminated. According to Carthon, his supervisors eliminated the post to prevent him from applying for and receiving a promotion. Second, Carthon alleges that he was discriminated against when Michael Griffith, a white female, was selected to fill a newly created maintenance superintendent position in 2000. Third, Carthon asserts that he should have been promoted when Johnson Controls created a project engineer position designed to absorb the duties formerly performed by the plant engineering manager. Instead, Brian Esposito, a white male, was selected. Fourth, Carthon complains that Chet Sears, a white male, was promoted to a manager trainee position instead of Carthon. Last, Johnson Controls selected Morgann Davidson, a white female, for a quality engineer position over Carthon in late 2000. In general, Carthon contends that his non-promotions were incidents of racial discrimination because his "qualifications were equal to, or in many cases exceeded, those who were awarded the position[s], all of whom were white."

Carthon also alleges that he was subjected to unlawful retaliation when he was written up for failing "to scan out at the end of his shift" on September 20, 2000. According to

Carthon, he received this warning, his first disciplinary sanction at Johnson Controls, on September 26, 2000--one day after expressing to two supervisors his concern that he was being denied promotional opportunities at Johnson Controls because of his race. Carthon also claims to have suffered mental anguish, embarrassment, and humiliation as a result of his various non-promotions and the disciplinary action.

In March 2002, Carthon brought suit against Johnson Controls alleging employment discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (2000), and Louisiana law, see LA. REV. STAT. ANN. §§ 23:301 et. seq. (West 1998), § 51:2256 (West 2003). In addition, Carthon brought a state law claim for intentional infliction of emotional distress. Johnson Controls subsequently filed a motion for summary judgment on all of Carthon's claims. The district court granted this motion and entered a judgment in favor of Johnson Controls. Carthon timely appeals.

## II. DISCUSSION

We review a district court's grant of summary judgment de novo, applying the same standard as the district court. Manning v. Chevron Chem. Co., 332 F.3d 874, 877 (5th Cir. 2003). Summary judgment is proper when the record, viewed in the light most favorable to the non-moving party, demonstrates no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); see also Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2001).

A.    Employment Discrimination

In the district court, Carthon attempted to prove that Johnson Controls's employees intentionally discriminated against him because of his race by utilizing the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).[1]  Under this framework, Carthon was first required to establish a prima facie case of discrimination by a preponderance of the evidence on each of his non-promotion claims by showing that (1) he is within a protected class, (2) he was qualified for the position, (3) he was not selected, and (4) the position was filled by a person not in the protected class.  See Blow, 236 F.3d at 296.  The district court assumed, for the purposes of summary judgment, that Carthon met this initial burden.[2]

A plaintiff's prima facie case "creates a rebuttable presumption that the employer unlawfully discriminated against" him.  Johnson, 351 F.3d at 622 (internal quotation marks omitted).  The burden of production then shifts to the employer to proffer a legitimate, non-discriminatory reason for not promoting the plaintiff.  See Blow, 236 F.3d at 296-97.  Here, Johnson Controls provided evidence that it did not chose Carthon

---

[1]    The parties do not dispute that Title VII principles govern Carthon's state law discrimination claims.  See Johnson v. Louisiana, 351 F.3d 616, 619 n.1 (5th Cir. 2003).

[2]    Because we agree with the district court that this case can be resolved on other grounds, we need not address Johnson Controls's argument that Carthon failed to present a prima facie case of discrimination.  See Perez v. Region 20 Educ. Serv. Ctr., 307 F.3d 318, 324 (5th Cir. 2002).

to fill the positions both because his supervisors had concerns about his efficiency, initiative, attitude, and communication skills and because the individuals who were selected had supervisory experience, leadership abilities, and/or histories of going "above and beyond" their assigned duties.[3]  Therefore, to survive the motion for summary judgment, the district court required Carthon to provide sufficient evidence to create a genuine issue of material fact regarding whether these reasons were merely a pretext for discrimination.  See id. at 297-98. Ultimately, the district court held that Carthon did not meet this burden because he offered only conclusory allegations that he was more qualified than the other applicants.

On appeal, Carthon claims that the Supreme Court's decision in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), signals the demise of the McDonnell Douglas framework.  In Desert Palace, the Court held that a plaintiff who presents only circumstantial (and not direct) evidence of discrimination is nevertheless entitled to a "mixed motive" jury instruction under 42 U.S.C. § 2000e-2(m).  Id. at 101.  Importantly, to succeed on a Title VII claim under the mixed motive analysis, the "plaintiff need only present sufficient evidence [to demonstrate that] 'race, color, religion, sex, or national origin was a motivating factor'" behind the adverse employment decision.  Id. (emphasis

---

[3]      The company also noted that it did not promote Carthon to the plant engineering manager position because that post was eliminated as unnecessary based on the size of the Shreveport plant at the time Greer left the company.

added).  According to Carthon, Desert Palace implicitly overrules
the McDonnell Douglas burden-shifting framework, allowing all
Title VII plaintiffs to proceed under a mixed motive theory of
recovery.  We need not reach the question whether Desert Palace
has changed the role of McDonnell Douglas in Title VII cases,
however.  Carthon waived this argument by invoking the McDonnell
Douglas framework below.  See Hillstrom v. Best Western TLC
Hotel, 354 F.3d 27, 30-31 (1st Cir. 2003).  And, even assuming
that the issue was preserved, the outcome of this case would be
unaffected because Carthon "has provided no evidence, direct or
circumstantial, from which a reasonable jury could logically
infer that [race] was a motivating factor" in Johnson Controls's
promotion decisions.  Allen v. City of Pocahontas, Ark., 340
F.3d 551, 557 n.5 (8th Cir. 2003); see also Love-Lane v. Martin,
355 F.3d 766, 786-87 (4th Cir. 2004); Hillstrom, 354 F.3d at
30-31.

    As the district court correctly noted, Carthon introduced no
evidence tending to show that Johnson Controls's reasons for not
promoting him were pretextual.  Carthon disagrees, and asserts
that the company's reliance on largely subjective criteria is
itself evidence of pretext.  But, we have held that "[t]he mere
fact that an employer uses subjective criteria" to make
employment decisions does not demonstrate pretext.  Manning, 332
F.3d at 882.  Carthon also argues that because he testified in
his deposition that he has never been counseled for lack of
efficiency, poor initiative, or ineffective communication skills,

these reasons for not promoting him are necessarily false. Yet, Carthon's contention is belied by his own admission, in the same deposition, that he <u>was</u> verbally counseled by a supervisor regarding the length of time it took him to complete his assignments and to respond to maintenance calls. Finally, Carthon's assertion that "his education was equivalent . . . and at times superior to the other candidates selected" is equally unpersuasive. Even if Carthon is correct,[4] this fact does not cast doubt on Johnson Controls's assertion that the selectees were more qualified to fill each position because of their on-the-job experience and work performance. <u>See</u> <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 723 (5th Cir. 2002) (holding that a plaintiff's "better education, work experience, and longer tenure with the company do not" create an inference of pretext); <u>Odom v. Frank</u>, 3 F.3d 839, 847 (5th Cir. 1993) (refusing to infer pretext unless "[the plaintiff]'s qualifications leap from the record and cry out to all who would listen that he was vastly--or even clearly--more qualified for the subject job than" the candidate selected).

Because Carthon failed to provide any evidence of pretext, we affirm the district court's grant of summary judgment to Johnson Controls on the non-promotion claims.

B. <u>Retaliation</u>

---

[4] In his deposition, Carthon admitted that he was unfamiliar with Griffith's, Davidson's, and Sears's experience, qualifications, and background.

Carthon next contends that the district court erred in concluding, as a matter of law, that Johnson Controls did not unlawfully retaliate against him by issuing a written disciplinary warning one day after he complained to his superiors about racial discrimination in the company.  To establish a prima facie case of retaliation under Title VII, Carthon must show "(1) that [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action."  Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001) (internal quotation marks omitted).  We agree with the district court that Carthon failed to satisfy the second prong of this test.  "This court has determined that only 'ultimate employment decisions,' 'such as hiring, granting leave, discharging, promoting, and compensating' satisfy the 'adverse employment action' element of a prima facie case of retaliation." Id. (quoting Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995)); see also Mattern v. Eastman Kodak Co., 104 F.3d 702, 707 (5th Cir. 1997) ("[O]ur court has stated that 'Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions.'" (quoting Dollis, 77 F.3d at 781-82)).  Carthon's receipt of a single disciplinary warning--without an attendant change in the terms or conditions of his employment--does not qualify as an ultimate employment decision.  See Thomas v. Tex. Dep't of Criminal

<u>Justice</u>, 220 F.3d 389, 394 n.2 (5th Cir. 2000) (holding that "receiving formal discipline" is not an "ultimate employment decision").

On appeal, Carthon suggests that the Supreme Court implicitly overruled this circuit's ultimate employment decision doctrine when it held that the anti-retaliation provision of Title VII, 42 U.S.C. § 2000e-3(a), protects <u>former</u> as well as current employees. See <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 346 (1997). We disagree. After <u>Robinson</u>, we have continued to apply the "ultimate employment decision" doctrine. <u>See, e.g.</u>, <u>Hernandez v. Crawford Bldg. Material Co.</u>, 321 F.3d 528, 531 (5th Cir. 2003); <u>Burger v. Cent. Apartment Mgmt., Inc.</u>, 168 F.3d 875, 878 (5th Cir. 1999). As we explained in <u>Mattern</u>, by limiting recovery to cases where an employer's retaliation impacts an ultimate employment decision, this circuit ensures that an action that "<u>might</u> jeopardize" employment decisions in the "future," but has as yet had no tangible effect, does not give rise to liability. 104 F.3d at 708. <u>Robinson</u>, which held that a plaintiff could bring a claim of retaliation after her former employer provided a negative job reference in response to her application for employment at a different company, does not cast doubt on the viability of this rule. 519 U.S. at 339, 346. Importantly, the negative reference in <u>Robinson</u> was tied to a specific "ultimate employment decision" (hiring), albeit not by the former employer; it was not actionable simply because it might have affected an employment decision that may or may not

have taken place in the future.  Carthon's receipt of a single written disciplinary warning, by contrast, does not rise to the level of actionable retaliation.  We therefore affirm the district court's grant of summary judgment to Johnson Controls on this claim.

C.    Intentional Infliction of Emotional Distress

Finally, Carthon asserts that the district court erred in concluding that his claim for intentional infliction of emotional distress was legally insufficient.  In Louisiana, an employee may recover against his employer for intentional infliction of emotional distress if he demonstrates "(1) that the conduct of the [employer] was extreme and outrageous; (2) that the emotional distress suffered by the [employee] was severe; and (3) that the [employer] desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct."  White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991).  Viewing the record in the light most favorable to Carthon, his allegations fail to satisfy the first prong of this analysis.  Johnson Controls's non-discriminatory decisions not to promote Carthon on five occasions, combined with the issuance of a single disciplinary warning after Carthon complained about not receiving the promotions, is not conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community."  Id.; cf. Nicholas v. Allstate Ins.

Co., 765 So. 2d 1017, 1025-28 (La. 2000) (reviewing cases). Thus, we affirm the district court's grant of summary judgment to Johnson Controls on this claim.

## III. CONCLUSION

Accordingly, we AFFIRM the judgment of the district court.