United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 10, 2006**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

—————————

No. 06-40004

(Summary Calendar)

—————————

JOHN KEBIRO,

Plaintiff - Appellant,

versus

WALMART,

Defendant - Appellee.

———————————————————————————————

Appeal from the United States District Court
For the Eastern District of Texas
USDC No. 4:04-CV-177

———————————————————————————————

Before HIGGINBOTHAM, WIENER and GARZA, Circuit Judges.

PER CURIAM:*

     Plaintiff-Appellant John Kebiro ("Kebiro") appeals the district court's grant of summary

judgment in favor of Wal-Mart Stores, Inc. ("Wal-Mart") after holding that Kebiro failed to establish

———————————

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

a *prima facie* case of discrimination, retaliation, or harassment on account of his age, national origin or complaints to the EEOC. Kebiro also challenges the district court's dismissal of his racial and gender discrimination claims for lack of subject matter jurisdiction.

Kebiro began working as a cashier at Wal-Mart in 2000. In 2003 and 2004, he applied for several management positions including multiple assistant manager training program positions, two customer service manager positions, two support manager positions and a department manager position. He did not receive any of these promotions. During his tenure at Wal-Mart, Kebiro was disciplined three times for various infractions of company policy.

Kebiro filed two complaints with the EEOC as a result of his failed promotion applications: one alleging that Wal-Mart discriminated against him on the basis of his age; the other alleging that Wal-Mart discriminated against him on the basis of his national origin and in retaliation for filing his first EEOC complaint.[1] The EEOC could not determine that Wal-Mart had acted illegally with respect to Kebiro.

Kebiro then filed suit in federal district court claiming that Wal-Mart had discriminated against him on the basis of his age, national origin, race, and gender; retaliated against him for lodging a complaint with the EEOC; and harassed him, all in violation of 42 U.S.C. § 2000e-2(a)(1) and 29 U.S.C. § 621 *et seq*. The district court dismissed Kebiro's claims of racial and gender discrimination for lack of subject matter jurisdiction because he had not exhausted his administrative remedies. After discovery ended, the district court granted summary judgment in favor of Wal-Mart on Kebiro's remaining claims. Kebiro appeals both the dismissal of his racial and gender discrimination claims and

---

[1] Kebiro is a black male from Kenya and was approximately 59 years old at the time he applied for the various promotions.

the summary judgment.

We review a dismissal for lack of subject matter jurisdiction *de novo*. *Johnson v. Housing Authority of Jefferson Parish*, 442 F.3d 356, 359 (5th Cir. 2006). In a discrimination case, the district court does not have subject matter jurisdiction until the "EEOC has first had the opportunity to obtain voluntary compliance." *Pacheco* v. *Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). The relevant question is whether the claims presented in the district court could "reasonably be expected to grow out of the charge of discrimination" to the EEOC. *Id*. Kebiro's filings with the EEOC never mentioned anything but his age, national origin, and prior filings with the EEOC. Furthermore, the persons who received the positions for which Kebiro had applied were only mentioned in terms of their age and their status as non-Kenyans. His racial and gender discrimination claims therefore could not have been expected to grow out of Kebiro's filings with the EEOC, and the district court properly dismissed them.

We review the grant of summary judgment *de novo*. *Blow v. City of San Antonio*, 236 F.3d 293, 296 (5th Cir. 2001). "Summary judgment is appropriate only if the full record discloses 'no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting FED R. CIV. P. 56(c)). The court "view[s] all facts in the light most favorable to the non-moving party." *Id*.

When determining whether summary judgment was the proper means of adjudicating a discrimination claim, we apply the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Kebiro carries the initial burden of establishing a *prima facie* case of discrimination. *Median v. Ramsey Steel Co*, 238 F.3d 674, 680 (5th Cir. 2001). To do so, he must show that: 1) he is a member of a protected class; 2) he sought

and was qualified for a position; 3) he was rejected for the position; and 4) the employer continued to seek or promoted applicants with the plaintiff's qualifications. *Id.* at 680-81.

Kebiro admitted in his deposition that he did not know what the qualifications were for the various management positions for which he had applied. Wal-Mart's summary judgment evidence makes clear, however, that only employees with past supervisory experience or exceptional employees with no past supervisory experience were considered for the positions for which Kebiro applied. Kebiro presented no evidence that he has ever had a supervisory position in the past or that he was an exceptional employee. In fact, all his employee evaluations state that he was rated "meets expectations," except once when he was rated "exceeds expectations." Kebiro has presented no evidence that he was qualified for any of the management positions for which he applied.

Furthermore, Kebiro has tendered no evidence that persons with his qualifications were promoted to those positions. By contrast, Wal-Mart submitted affidavits from various employees who stated, *inter alia*, that all the persons who were promoted did have supervisory experience. Because Kebiro fails to establish either the second or fourth elements of a *prima facie* case of discrimination, Wal-Mart is entitled to summary judgment on that claim.

We also apply the *McDonnell Douglas* burden-shifting framework when determining whether summary judgment was proper for a retaliation claim. *See Rios v. Rossotti*, 252 F.3d 375, 380 (5th cir. 2001). Kebiro must make a *prima facie* showing of retaliation by establishing that: 1) he engaged in an activity protected by Title VII or the ADEA; 2) he suffered an adverse employment action; and 3) a causal link exists between the protected activity and the adverse employment action. *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). Kebiro's complaint to the EEOC

satisfies the first element. Assuming that Kebiro has also suffered adverse employment actions,[2] however, he still has not provided any evidence of a causal link between his filing a complaint with the EEOC and the adverse employment actions. Kebiro has not identified any individual who even knew that he had filed a complaint. By contrast, several Wal-Mart employees whom Kebiro accuses of retaliating against him submitted affidavits stating that they had no knowledge of any complaint to the EEOC. Because Kebiro has not established a *prima facie* case of retaliation, the district court properly granted summary judgment to Wal-Mart on this claim. *See Rios* 252 F.3d at 380.

Finally, to survive Wal-Mart's summary judgment motion on his harassment claim, Kebiro once again carries the initial burden of establishing a *prima facie* case. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 354 (5th Cir. 2001). To do so, he must show: 1) he is a member of a protected class; 2) he was subjected to unwelcome harassment; 3) the harassment was motivated by his membership in a protected class; and 4) the harassment affected a term, condition or privilege of his employment. *Id* at 353. The fourth element of this test is met only if the harassment was "sufficiently severe or pervasive so as to . . . create an abusive working environment." *Id*. "In determining whether a workplace constitutes a hostile work environment, courts must consider the following circumstances: the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th

---

[2] The Supreme Court recently issued an opinion altering the standard for an adverse employment action. *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405 (2006). The Court held that an act of retaliation is actionable if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 2415 (internal quotation omitted).

Cir. 2002).

To support his claim, Kebiro asserts that he had a difficult time with a Workers' Compensation claim, that he was frequently made to work as a cashier against his doctor's orders, and that he was not allowed to take a half-hour lunch break. This court has upheld district courts' summary judgments on the ground that the plaintiff has not produced evidence of an abusive work environment on facts far more egregious than these. *See Hockman v. Westward Communications, LLC*, 407 F.3d 317 (5th Cir. 2004) (affirming summary judgment despite evidence of repeated touching and offensive remarks of a sexual nature);[3] *Derouen v. Carquest Auto Parts*, 275 F.3d 42 (5th Cir. 2001) (same);[4] *Shepard v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871 (5th Cir. 1999) (same).[5] Because Kebiro has not presented evidence of an abusive work environment, the district court's grant of summary judgment was proper.

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[3] "Hockman claims that soon after she returned to Westward, Rogers . . . commented on the body of a former Westwood employee, Sheila Ledesma. Specifically, Hockman claims that '[Rogers] would tell her that Sheila had a nice behind.' Next, Hockman claims . . . Rogers would brush up against her breasts and behind. Third, Hockman claims that on one occasion Rogers 'slapped [her] behind with a newspaper.' Fourth, Rogers once attempted to kiss Hockman. Fifth, on more than one occasion, Rogers asked Hockman to come in early so that they could be alone together." *Id*. at 321.

[4] "Derouen claims co-worker attempted to grab her breast and later put his hand on and rubbed her thigh." *Id*.

[5] "According to Shepherd's deposition, on one occasion Moore stood in front of Shepherd's desk and remarked 'your elbows are the same color as your nipples.' Shepherd testified that Moore remarked once 'you have big thighs' while he simulated looking under her dress. Shepherd claimed Moore stood over her desk on several occasions and attempted to look down her clothing. According to Shepherd, Moore touched her arm on several occasions, rubbing one of his hands from her shoulder down to her wrist while standing beside her. Shepherd alleged additionally that on two occasions, when Shepherd looked for a seat after coming in late to an office meeting, Moore patted his lap and remarked 'here's your seat.'" *Id.* at 872.