**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 27, 2009

Charles R. Fulbruge III
Clerk

No. 08-31023

JOSEPH B PREJEAN,

Plaintiff - Appellant

v.

RADIOLOGY ASSOCIATES OF SOUTHWEST LOUISIANA INC,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Louisiana
No. 2:06-CV-1709

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff–appellant Dr. Joseph Prejean, who is African–American, resigned from his position as a shareholder–director of Radiology Associates of Southwest Louisiana, Inc. in the fall of 2002. His resignation occurred in the aftermath of a threat by two other physicians to leave the group if Prejean was not removed, although no formal vote was ever held on removing Prejean. Prejean argues his departure from the group was a constructive discharge resulting from race discrimination. Prejean brought suit, alleging state law claims as well as a

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

claim under 42 U.S.C. § 1981. The district court granted Radiology Associates' motion for summary judgment, holding that Prejean failed to raise a genuine issue of material fact rebutting Radiology Associates' legitimate, race-neutral explanations for the alleged discharge. For the following reasons, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual background

In 1993, African–American radiologist Dr. Joseph Prejean joined Diagnostic Radiology Associates, and he became a part owner one year later, with an equal right to ownership, reimbursement, and management input. In 1998, the group merged with another radiology group and became Radiology Associates of Southwest Louisiana, Inc. ("RASL"). At that point, nine doctors shared ownership of RASL, with Dr. Gene Lampson acting as the group's president. Under the employment contract that each of the nine physicians signed, removal required a two-thirds vote by all the owners. Prejean was the only African–American shareholder of RASL.

After the merger in 1998, interpersonal struggles developed within RASL over such topics as scheduling and a proposed outsourcing of MRI readings. In early September 2002, two Caucasian shareholders, Dr. Charles Brdlik and Dr. Donald Thomas, informed Lampson that they were planning to leave the group. Lampson asked if he could do anything to make them stay, and they replied that they would be willing to stay if Prejean and Dr. Bruce Knox (a Caucasian physician) would leave. Lampson took an informal poll of the shareholders and told Prejean that it appeared two-thirds of the physicians would likely vote to remove him. He also indicated to Prejean that the only way to avoid a formal vote was to resign, but that the results of a vote were not yet certain, as Prejean had yet to present his side of events to the shareholders. Hoping to keep the group together, Lampson continued attempts to negotiate and later informed Knox that it appeared that he could remain with RASL if Prejean alone left. On

September 17, 2002, before a formal vote was held, Prejean submitted a letter of resignation, effective December 31, 2002. Knox also resigned shortly after Prejean.

In his deposition testimony, Lampson described "clashes" and "power struggles" between two factions leading up to Prejean's departure from the group. Prejean and Knox often lined up against Brdlik and Thomas at shareholder meetings. Brdlik and Thomas apparently lodged a complaint against Prejean and two other physicians regarding inefficiency. Lampson expressed the belief that Brdlik's and Thomas's "frustration" at "not being able to compromise" drove them to the decision to leave RASL if Prejean and Knox were not forced out. Lampson described Prejean as "competent" and "up to par" and said he personally had no complaints about Prejean's productivity, but he also expressed concern that Prejean's "rough" demeanor lost RASL a potential contract with Beauregard Hospital.

In an affidavit filed four years after his deposition, Lampson further described the situation leading up to Prejean's departure. The parties dispute whether these new details are inconsistent with Lampson's original deposition testimony. Lampson stated in the affidavit that "some of the other shareholder-directors had contemplated leaving [RASL] because of work-related conflicts and issues they had with Dr. Prejean." He listed inefficiency and a "rough manner with clients" as examples of these work-related conflicts. He did not mention in the affidavit that the inefficiency complaint lodged against Prejean was also directed against two other physicians. In the affidavit, Lampson described telling Prejean that Brdlik and Thomas "may have [had] enough votes at the moment to terminate [Prejean's] contract," but that he himself believed the result might change, as Prejean had yet to present his side to the other shareholders. Lampson also attached two letters from clients expressing complaints about Prejean's demeanor and describing a history of rude behavior.

3

**B. Procedural background**

Prejean filed suit in Louisiana state court, alleging violations of state employment law. After Prejean amended his complaint to include a claim under 42 U.S.C. § 1981, RASL removed the case to the United States District Court for the Western District of Louisiana. The district court granted RASL's motion for summary judgment as to both the state and federal claims. On the § 1981 claim, the district court held that Prejean failed to create a genuine issue of material fact as to whether he and Knox were similarly situated. Alternatively, the district court held that Prejean did not raise a genuine issue of material fact to rebut RASL's legitimate, nondiscriminatory reasons for his alleged discharge. Specifically, the district court found that Prejean submitted no evidence to show that the reasons proffered by RASL were pretextual or that his departure from the practice was the result of intentional discrimination. Prejean timely appealed to this court, and we have jurisdiction under 28 U.S.C. § 1291.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 386 (5th Cir. 2007). Summary judgment is appropriate when "the discovery and disclosure materials on file[] and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Breaux v. Halliburton Energy Servs.*, 562 F.3d 358, 364 (5th Cir. 2009). "A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). This court must take all the facts and evidence in the light most favorable to the non-moving party. *Breaux*, 562 F.3d at 364.

## III. DISCUSSION

**A. The § 1981 framework**

The basic structure of a § 1981 case requires the plaintiff alleging race discrimination to make an initial prima facie showing that: (1) he belongs to a protected class; (2) he was qualified for the position he held prior to discharge; (3) he was discharged from that position; and (4) other similarly situated individuals who did not belong to the protected class were not discharged.[1] *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995) (applying the legal framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973) to a discharge case). After the plaintiff has made this showing, the burden of production shifts to the defendant to rebut the prima facie case by setting forth one or more legitimate, race-neutral explanations for the challenged employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506–07 (1993). This burden of production does not involve a credibility assessment by the court. *Id.* at 509. If the defendant can provide nondiscriminatory reasons for the action, the presumptions and burdens of the *McDonnell Douglas* framework disappear and the focus turns to the question of "discrimination *vel non*." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43 (2000).

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 143 (quotation marks omitted). In order to satisfy this burden, the plaintiff has the "opportunity to prove . . . that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). The plaintiff may do so by showing direct evidence of the employer's discriminatory motive, or he may "show[] that the employer's proffered explanation is unworthy of credence," which constitutes one form of circumstantial evidence of a discriminatory motive. *Reeves*, 530 U.S. at 143

---

[1] The elements of a § 1981 claim are identical to those for a claim under Title VII of the Civil Rights Act of 1964. *Pratt v. City of Houston*, 247 F.3d 601, 606 n.1 (5th Cir. 2001).

(quotation marks omitted). When determining the question of pretext, the court may properly consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002) (quoting *Reeves*, 530 U.S. at 148–49). If "no rational factfinder could conclude that the action was discriminatory," summary judgment for the employer is appropriate. *Id.* (quoting *Reeves*, 530 U.S. at 148).

## B. Prejean's claim of wrongful discharge under § 1981

Assuming without deciding that Prejean has shown a prima facie case, he failed to rebut RASL's legitimate, nondiscriminatory explanation and did not otherwise show that intentional discrimination motivated his departure.

### i. Prejean's prima facie case

Two of the four parts of Prejean's prima facie *McDonnell Douglas* case are not disputed: he is a member of a protected class and he was qualified for the position he held before his discharge. However, the issues of whether Prejean was constructively discharged and whether Prejean and Knox were similarly situated remain in dispute. The district court found that Prejean raised a genuine issue of material fact as to the constructive discharge question, but not as to the similarly situated inquiry. Because we dispose of this case on the pretext issue, we assume without deciding that Prejean established his prima facie case.

### ii. RASL's legitimate, nondiscriminatory reasons for discharge

RASL has offered several legitimate, race-neutral explanations for Prejean's constructive discharge. RASL asserts that Prejean had work-related conflicts and issues, including "clashes" and "power struggles" with other members of the organization. In addition, RASL had concerns about Prejean's professional conduct and behavior towards clients and patients. Finally, several

6

members of RASL believed Prejean's "rough" tactics caused the group to lose a potential hospital contract. At this stage of the burden-shifting framework, credibility determinations are not appropriate. *St. Mary's Honor Ctr.*, 509 U.S. at 509. Taken as true, these reasons support a finding that RASL was not motivated by racial animus. *See id.* Therefore, RASL satisfied its burden of production.

### iii. Prejean's Evidence of Pretext

We must next determine whether Prejean has shown that the discharge was driven by discrimination. Because Prejean does not offer any direct evidence of discrimination,[2] he must show by circumstantial evidence that RASL's "proffered reason[s] [are] simply a pretext for discrimination." *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 881 (5th Cir. 2003). Keeping in mind the ultimate focus of the court's inquiry—discrimination *vel non*—"it is not enough . . . to *dis* believe the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination." *Reeves*, 530 U.S. at 147 (omission and emphasis in original, quotation marks omitted). "[S]ummary judgment is inappropriate if the evidence taken as a whole . . . creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains." *Pratt*, 247 F.3d at 606–07 (quotation marks omitted).

Where we have applied *Reeves* to reverse a grant of summary judgment, substantially more evidence of pretext has been required than the evidence presented by Prejean. *Price*, 283 F.3d at 724. For example, where two unsuccessful candidates for promotion made Title VII and § 1981 claims, they avoided summary judgment by providing evidence that "the plaintiffs were

---

[2] While the record includes several remarks that might arguably be described as direct evidence of racism, Prejean's counsel specifically stated during oral argument that the argument on appeal rests solely on the disparate treatment between Knox and Prejean as circumstantial evidence of pretext and racial discrimination.

obstructed in their efforts to complete the hiring process, the plaintiffs' qualifications were superior, the successful candidate was given special treatment, and the supervisor had allegedly discriminated on previous occasions." *Id.* (discussing *Pratt*, 247 F.3d at 607). Another Title VII plaintiff was held to have "presented sufficient evidence of pretext when the evidence indicated that the employer's proffered reason [for not promoting plaintiff]—that plaintiff's application was not received in time—could in fact be false." *Id.* (discussing *Blow v. City of San Antonio*, 236 F.3d 293 (5th Cir. 2001)). There, the plaintiff brought forth evidence that her department "deliberately failed to publicize the job opening" and "actively discouraged" her application. *Blow*, 236 F.3d at 297.

In comparison, although Prejean attempts to create a genuine issue of material fact by relying on RASL's "shifting and conflicting" reasons for Prejean's discharge,[3] his attempt ultimately fails to create an issue of fact with regard to a conclusively nondiscriminatory reason for the discharge: the loss of the contract with Beauregard Hospital. Prejean fails to show that this reason is unworthy of credence. This concern was consistently raised by Lampson in both the deposition and the affidavit four years later. Lampson stated in his deposition that "some of the [RASL shareholders felt] that [Prejean]'s tactics were too rough" and had caused RASL to lose the potential contract. The record does not reflect that any other physicians were to blame for the loss of the contract.[4] Prejean did not put forth any evidence—unlike the plaintiffs in *Pratt*

---

[3] Specifically, Prejean holds out alleged inconsistencies between Lampson's deposition testimony and affidavit as creating genuine issues of material fact. However, these inconsistencies are largely semantic, rather than substantive.

[4] Prejean argues in his brief and at oral argument that the disparate treatment between Prejean and Knox shows evidence of pretext. Prejean insists that he has established disparate treatment on the grounds that Brdlik and Thomas initially had the same complaints against both Prejean and Knox, but Knox was allowed to stay after further negotiations. While some of the complaints leveled against Prejean were also directed at Knox (i.e., the

and *Blow*—to show either that he did not contribute to the loss of the contract or that his fellow shareholders did not believe that he was at fault. Prejean has simply not made any showing that this race-neutral reason was merely pretextual or unworthy of credence.

Even if Prejean had successfully demonstrated that RASL's explanations were pretextual, the record still "does not support an inference that intentional discrimination was the real reason for the employment decision." *Price*, 283 F.3d at 723. In sum, Prejean failed to raise a genuine issue of material fact permitting an inference that intentional discrimination motivated his discharge from RASL. Therefore, we affirm the district court's grant of summary judgment for RASL.

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

complaint of inefficiency and the dispute over whether to outsource MRI readings), the loss of the hospital contract is purely attributed to Prejean. Nowhere in the record does it indicate that Knox was involved.